**Exhibit B**

AO88  (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

Northern _____ DISTRICT OF _____ California

| | |
|---|---|
| Digene Corporation, Plaintiff, | **SUBPOENA IN A CIVIL CASE** |
| V. | |
| Third Wave Technologies, Defendant. | Case Number:[1]  07-C-0022-C |

TO:  Hunter Laboratories, Inc.
2605 S. Winchester Blvd
Campbell, CA 95008

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☑   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION    170 South Market Street San Jose, California | DATE AND TIME 1/9/2008 10:00 am |
|---|---|

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
All documents in your possession, custody, or control responsive to the requests set forth in Schedule A (see below) and in accordance with the definitions and instructions thereof.

| PLACE    Hunter Laboratories, Inc. 2605 S. Winchester Blvd | DATE AND TIME 1/7/2008 10:00 am |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
                    DATE                                SIGNATURE OF SERVER

                                                _____
                                                ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## SCHEDULE A

## INSTRUCTIONS

1.      These Requests require you to produce all Materials that are in your actual or constructive possession, custody, or control.

2.      As required under Rule 45(d)(1) of the Federal Rule of Civil Procedure, please produce Materials in the same form and same order as they are kept in the ordinary course of business, or otherwise organize and label them to correspond with the categories of these requests.  If documents are produced as kept in the ordinary course of business, the documents are to be produced in the boxes, file folders, bindings, or other containers in which the documents are found.  The titles, labels, or other descriptions on the boxes, file folders, bindings, or other containers are to be left intact.  Documents from any single file should be produced in the same order as they were found in such file.  If copies of documents are produced, such copies should be legible and bound or stapled in the same manner as the original.

3.      Selection of documents from the files and other sources and the numbering of such documents shall be performed in such a manner as to insure that the source of each document may be determined, if necessary.

4.      Documents attached to each other must not be separated.

5.      The term "all documents" means any and all documents that might reasonably be located through a search of all locations reasonably likely to contain documents called for by this Request.

6.      If you claim that a Request is over-broad, please respond to that portion of the Request to which you do not object and specifically state why you claim the Request is over-broad.

7.      If you claim that responding to a Request is unduly burdensome, please respond to that portion of the Request to which you do not object and specifically state why you claim the Request is unduly burdensome.

8.      If you refuse to respond, in whole or in part, to any Request on the grounds of privilege or other immunity from discovery, please identify:  (1) the nature of the claimed privilege or immunity; (2) the type of communication, document, electronically stored information, or thing (e.g., email, letter, or memorandum) (collectively, the "Privileged Material") and, if known, the length thereof (e.g., number of pages of a document or number of lines of an email); (3) the general subject matter of the Privileged Material; (4) the creation or occurrence date of the Privileged Material; (5) the present custodian of the Privileged Material; (6) such other information as is sufficient to identify the Privileged Material for a subpoena including, if known, the author or creator, the addressees or recipients, and, where not apparent, the relationship of the author or creator and addressees or recipients to each other; and (7) all other persons who know of, were part of, or received the Privileged Material or have been told about any aspect of the Privileged Material.

9.      In answering this Request, you are required not only to furnish such information as you know of your own personal knowledge, but also information which is in the possession of your attorneys, investigators, or anyone else acting in your behalf or their behalf.

10.     Electronically stored information ("ESI") must be produced in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable.

11.     The following rules of construction apply to these admissions:

A. All/Each/Every. The term "all" shall be construed to include the terms "each" and "every," and "each" shall be construed to include the terms "all" and "every" and "every" shall be construed to include the terms "all" and "each."

B. And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

C. Number. The use of the singular form of any word includes the plural and vice versa.

D. Words employing the singular Number include the plural, and words employing the plural include the singular.

E. Words employing the masculine gender include the feminine gender and neuter, and words employing the neuter gender include the masculine and feminine.

F. The use of a verb in any tense shall be construed as the use of the verb in all other tenses whenever necessary to bring within the scope of the Request all responses that might otherwise be construed as outside its scope.

G.  A plural noun shall be construed as a singular noun, and a singular noun shall be construed as a plural noun whenever necessary to bring within the scope of the Request all responses that might otherwise be construed as outside its scope.

H.  The gender neutral form shall include the feminine or masculine form whenever necessary to bring within the scope of the Request all responses that might otherwise be construed as outside its scope.

12.     For purposes of these Requests, terms not specifically defined shall be given their ordinary meaning as you understand them to be used in the trade.

13.     If you object to any portion of a Request, please respond to any portion of the Request to which you do not object.

14.     If you object to or disagree with any of the definitions set forth in these Requests, or if you do not understand any term used in these Requests, please explain in detail the nature of your disagreement with the definition, or lack of understanding of the term, provide an alternative definition of the term, and respond in accordance with that alternative definition.

## DEFINITIONS

A.     "Digene" means Digene Corporation.

B.     "TWT" means Third Wave Technologies.

C.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a).  In addition, any information contained in any magnetic storage media is expressly included within the definition of "document."  A draft or non-identical copy is a separate document within the meaning of

this term. "Document" means the original document (or a copy thereof if the original is

not available), or drafts of any written, printed, typed, recorded or graphic matter of any

kind or description, however produced or reproduced, or any copy thereof which differs

in any way from the original, including but not limited to notations, underlining or

marking, whether or not in the possession, custody or control of the defendants.

"Document" includes, but is not limited to, annual reports, books, bulletins, circulars,

written communications, correspondence, letters, charts, checks, contracts, brochures,

pamphlets, periodicals, proposals, agreements, promotional literature, sales aids, bills,

invoices, orders, diaries, calendars, appointment books, studies, summaries, memoranda,

reports, reviews, notes, telegrams, telecopies, manuals, policy statements, ledgers,

journals, accounting or other workpapers, audit reports, income and expense statements,

balance sheets, computer printouts, resumes, time edits, time edit summaries,

electromagnetically recorded data, discs, graphs, drawings, claims, complaints, petitions,

tickets, ticket stubs, applications, evaluations, expense reports, personnel files, employee

evaluations, quotas, spreadsheets, charts, employment records, termination notices,

employment applications, logs, personnel files, forecasts, credit card receipts, minutes,

resolution, notations, messages, inter-office memoranda, intra-office memoranda, files,

calculations, spreadsheets, subcontracts, tapes or other recordings, telegrams, pay or

salary stubs or receipts, W-2 forms, and federal and state tax returns.

       D.    "Communication" means the transmittal of information (in the

form of facts, ideas, inquiries or otherwise). "Communication" includes all written

communications and, with respect to oral communications, includes, but is not limited to,

every discussion, conversation, conference, meeting, interview or telephone call.

E.    "Person" or "persons" includes natural persons, corporations, partnerships, associations, and other legal entities, and governments or governmental bodies, commissions, boards or agencies.

F.    "Relating," "related," "concerning," "about," "referring to," and "regarding" to any given subject means constituting, containing, embodying, reflecting, identifying, stating, referring to, dealing with, or in any way pertinent to that subject.

G.    "Include" and "including" are to be understood to mean without limitation so as to acquire the broadest possible meaning.

H.    "HPV screening or genotyping product(s) or service(s)" means any Third Wave product(s) or service(s) that are used or can be used to detect and/or identify any strain of human papillomavirus and/or detect and/or identify the existence of human papillomavirus, including but not limited to Third Wave's Invader HPV detection methods and products.

I.    "Digene's HPV screening products" means Digene's "Hybrid Capture" HPV test, also known as the Digene® HPV Test, and the DNA with Pap® Test.

J.    "ASR" means analyte specific reagent.

K.    The "Patent-in-Suit" means U.S. Patent No. 5,643,715; and all applications to which the patent claims or is entitled to the benefit of a filing date, in whole or in part, and including all related parent, continuation, continuation-in-part and divisional applications and including all reissues, reexaminations and extensions and any foreign counterparts.

## REQUESTS FOR PRODUCTION

1.    All communications between you and/or Hunter Laboratories and anyone at Third Wave Technologies concerning Third Wave's HPV screening and/or genotyping product(s) and/or service(s).

2.    All communications between you and/or Hunter Laboratories and anyone at Digene concerning Digene's product(s) and/or service(s).

3.    All documents relating to or concerning Digene, and/or its products and services.

4.    All documents related to the development of any HPV screening and/or genotyping product(s) and/or service(s) provided by Hunter Laboratories, including but not limited to procedures or protocols developed by Hunter Laboratories for use with any screening or genotyping product(s) or service(s) incorporating HPV diagnostic and/or detection tests.

5.    All documents related to the development of any HPV screening and/or genotyping product(s) and/or service(s) provided by you and/or Hunter Laboratories, including but not limited to procedures or protocols developed by Hunter Laboratories for use with any screening or genotyping product(s) or service(s) incorporating Third Wave's HPV ASRs.

6.    Any documents referring or relating to the quality of results obtained using any of your and/or Hunter Laboratories' screening or genotyping product(s) or service(s) incorporating Third Wave's HPV ASRS, including but not limited to the accuracy, efficiency, predictability or dependability of any such results.

7.  All marketing or promotional materials, instructions, guidelines or other materials provided to you and/or Hunter Laboratories by third parties, vendors, and/or health service providers relating to or concerning HPV screening or genotyping product(s) or service(s).

8.  All marketing or promotional materials, instructions, guidelines or other materials provided to you and/or Hunter Laboratories by Third Wave concerning its HPV screening or genotyping product(s) or service(s).

9.  All documents referring or relating to Hunter Laboratories' HPV testing methods.

10. All documents referring or relating to your Hunter Laboratories' decision to switch from using Digene's HPV screening products to Third Wave's HPV screening or genotyping product(s) or service(s).

11. All documents referring or relating to application for Medicare, Medicaid or private payor reimbursement for any service provided by your and/or Hunter Laboratories using Third Wave's HPV screening or genotyping product(s) or service(s), including any documents referring or relating any payor reimbursement codes.

12. Documents sufficient to show any requirement or procedure promulgated by the Food and Drug Administration for validation of Hunter Laboratories' HPV screening or genotyping product(s) or service(s).

13. All communications between your and/or Hunter Laboratories' and the Food and Drug Administration concerning HPV screening or genotyping product(s) or service(s).

14.     All contracts and/or agreements between Hunter Laboratories and its vendors and/or suppliers of HPV reagents, HPV diagnostic tests, and/or testing equipment

15.     All contracts and/or agreements between Hunter Laboratories and Third Wave.

16.     All communication between you/and or Hunter Laboratories and its vendors and/or suppliers of HPV diagnostics, detection tests, and/or equipment.

17.     All communications with third party providers of HPV ASRs or HPV screening or genotyping product(s) or service(s).

18.      All documents referring or relating to Hunter Laboratories' HPV testing methods.